## JULIA VECSY AND LADISLAUS VECSY, HER HUSBAND, APPELLANTS, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, RESPONDENT.

Argued June 25, 1915—Decided November 15, 1915.

Plaintiff attempted to signal a train of defendant railroad company by pulling down a handle which raised a semaphore or signal board, supported on a post located in front of a station. A man assisted her by tying a wire, which was attached to a cross-bar of the post, around the handle to relieve the plaintiff from the necessity of holding it down. The wire was in two pieces looped together, and parted when plaintiff let go of the handle, which flew up, striking her in the face and causing her injury. There was no evidence to show that the defendant had installed the wire or that its defective condition had been brought home to it, or that that condition had existed for such length of time as to charge it with notice. *Held*, that no case of negligence on the part of the defendant was established, and that, therefore, a verdict for defendant was rightly directed. *Held, further*, that the doctrine of *res ipsa loquitur* did not apply.

On appeal from the Union Circuit Court.

For the appellants, *Clarence D. Meyer* and *Jeremiah A. Kiernan.*

For the respondent, *George Holmes* and *Frederick J. Faulks.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The question presented by this appeal is whether the trial judge erred in directing a verdict in favor of the defendant on the ground that no actionable negligence on its part had been established. The facts were as follows:

On July 25th, 1914, the date of the accident, and for some time prior, the defendant company maintained at Tremley, a village in the county of Union, on its Long Branch division, a passenger station at which no ticket agent or other repre-

sentative of the company was located. Certain of the trains in each direction stopped when signaled so to do by a semaphore or signal board supported on a post located in front of the station. This post had attached to it, at a convenient height from the ground, two handles, one of which was used by intending passengers to set the signal for eastbound trains and the other for westbound trains. In order to set the semaphore in a position to cause a train to stop at the station, it was necessary to press down the handle, and to maintain the signal board in position it was necessary for the handle to remain down. This required sufficient pressure to overcome a counter-balance estimated to weigh about forty pounds. To obviate the necessity of holding down the handle controlling either the eastbound or westbound semaphore, while signaling a train to stop, there were from time to time tied around a cross-bar of the signal post two wires which passengers employed to fasten down the respective handles.

On the morning of the day of the accident Mrs. Vecsy reached the station about twenty minutes before a westbound train she desired to take to Maurer was due. A Mr. Lungwitz had arrived there a few minutes before Mrs. Vecsy, intending to take an eastbound train for New York. To avoid holding down the handle, which would signal the train to stop, he used one of the wires which he found tied to the cross-bar of the signal post in order to fasten the handle down. Mrs. Vecsy upon her arrival undertook to use the other wire in order to tie down the handle controlling the signal for the westbound train. As soon as she had pulled this handle down, Mr. Lungwitz attempted to aid her in so using the second wire, and saw that it was in two parts, which were simply hooked or looped loosely together. Notwithstanding this, he tied the free end of this wire around the handle held down by Mrs. Vecsy, who thereupon let go of it, with the result that the strain upon the wire, affected by the weight of the counter-balance, caused the two parts to separate at the point where they had been so hooked or looped together. The handle flew up, striking Mrs. Vecsy in the face and causing her injury.

JUNE TERM, 1915.                    179

There was no evidence to indicate that the railroad company, or anyone acting for it, had supplied either of the wires or attached either of them to the cross-bar of the signal post; and there was no evidence to warrant an inference that they had been there for a sufficient period of time to have charged the defendant with notice of their presence or of their condition.

Even assuming that if knowledge of the defective wire, which it had not installed, had been brought home to the defendant company a sufficient length of time before the plaintiff's accident to have charged defendant with the duty of repairing it, the fact that there was no proof to show that the defective condition of the wire had been brought home to the defendant company before the accident, or that that condition had existed for such a length of time as to charge it with notice of the wire's condition, no case of negligence on the part of the defendant was established, and in this posture the verdict for the defendant was rightly directed. *Schnatterer* v. *Bamberger & Co.,* 81 *N. J. L.* 558. See, also, *Buda* v. *Dzuretzko,* 87 *Id.* 34.

Nor does the doctrine *res ipsa loquitur* apply. Mr. Smith's paraphrase of the maxim, in his treatise on negligence, was approvingly cited by this court in *Bahr* v. *Lombard, Ayres & Co.,* 53 *N. J. L.* 233 (at *p.* 238). So much of it as may be said to be here pertinent reads: "If something unusual happens with respect to the defendant's property, or something over which he has control, which injures the plaintiff, and the natural inference on the evidence is that the unusual occurrence is owing to the defendant's act, the occurrence, being unusual, is said to speak for itself that such act was negligent."

Now, it is to be observed that in the case under consideration, the occurrence which resulted in the plaintiff's injury *was not owing in any sense to the defendant's act,* and, therefore, it does not come within the rule.

The maxim *res ipsa loquitur* is thus defined by this court in *Mumma* v. *Eastern and Amboy Railroad Co.,* 73 *N. J. L.* 653, 658:

"This principle is that when through any instrumentality or agency under the management or control of a defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care."

As there is no evidence in the case at bar to show that the wire was under the management or control of defendant, or its servants, or that the defendant was charged with the exercise of care for the protection of the plaintiff at the time and place, with reference to the circumstance under which she was injured, it cannot be said that the accident would not have taken place if the defendant had exercised due care.

The judgment under review must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 14.

*For reversal*—None.